UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Dwight D. Mitchell, individually and on behalf of his children X.M. and A.M.; Bryce Mitchell; and Stop Child Protection Services from Legally Kidnapping,<br><br>Plaintiffs,<br><br>v.<br><br>Dakota County Social Services et al.,<br><br>Defendants. | Case No. 18-cv-1091 (WMW/BRT)<br><br><br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS** |

In this dispute arising from Defendants' temporary removal of Plaintiff Dwight D. Mitchell's children from his custody, Defendants move to dismiss Plaintiffs' 25-count amended complaint. (Dkts. 15, 24.) For the reasons addressed below, the Court grants Defendants' motions to dismiss.

## BACKGROUND

Plaintiffs are New Jersey residents Mitchell and his three children, X.M., A.M., and B.M. (collectively, the individual plaintiffs) and Stop Child Protection Services from Legally Kidnapping (SCPS), an association of parents who have been affected by Minnesota's child-protection services. The individual plaintiffs, along with Mitchell's then-wife Tatiana Litvinenko and her child, M.L., lived in Minnesota from at least February 2014 to July 2014. Defendants are Dakota County, Dakota County Social Services (DCSS), nine Dakota County officials, and three State of Minnesota officials.

Plaintiffs' claims arise from a February 16, 2014 incident in which police responded to a call from the Mitchell family's babysitter. The babysitter relayed to police X.M.'s allegations that Mitchell had inflicted corporal punishment on him. Police took the children from their home to the police station for questioning, where both X.M. and A.M. alleged that Mitchell had spanked them on prior occasions. County officials also reached out to Eva Campos, Mitchell's ex-wife and the biological mother of X.M., A.M., and B.M.[1] Campos alleged that Mitchell had abused the children, and she encouraged officials to pursue legal action against Mitchell in Minnesota, instead of in the children's home state of New Jersey. In response to Campos's allegations, DCSS removed X.M., A.M., and B.M. from Mitchell's custody.[2]

Defendant Susan Boreland subsequently commenced a Child in Need of Protection or Services (CHIPS) proceeding.[3] Mitchell accepted service of the CHIPS petition and attended an emergency protective hearing on February 26, 2014. In May 2014, Mitchell entered an *Alford* plea[4] in response to a criminal charge for malicious punishment of a

---

[1]     Campos had an antagonistic relationship with Mitchell. Dating back to 2009, Campos had made terroristic threats, violated restraining orders obtained by Mitchell, and repeatedly attempted to abduct their children.

[2]     Because B.M. was attending school outside Minnesota in February 2014, he was not physically removed from Mitchell's custody.

[3]     CHIPS proceedings are codified at Minn. Stat. §§ 260C.001 *et seq.*

[4]     In an *Alford* plea, an individual enters a plea without admitting guilt. *See North Carolina v. Alford*, 400 U.S. 25, 37-38 (1970) (holding that, when a "strong factual basis for the plea" exists in the record, "[a]n individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a . . . sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.").

child.  At a July 10, 2014 settlement conference for the CHIPS proceeding, Mitchell agreed to a court order prohibiting him from using corporal punishment in exchange for regaining physical custody of A.M. and B.M.  On July 21, 2014, Mitchell and his family returned to New Jersey without X.M.  On December 4, 2015, the state court dismissed the CHIPS petition against Mitchell.  The following day, DCSS returned X.M. to Mitchell's custody.

Plaintiffs allege numerous instances of misconduct by Defendants between February 2014 and December 2015.  Plaintiffs allege that Defendants were unlawfully motivated to separate Mitchell from his children, conspired to transfer custody to Mitchell's ex-wife, and made racially disparaging comments during their interactions with Mitchell.[5]  Plaintiffs also allege that Defendants forced Litvinenko to move out of Mitchell's Minnesota house during the CHIPS proceeding, threatening that Litvinenko would lose custody of her child, M.L., if she did not leave.  Finally, according to Plaintiffs, Defendants submitted unreliable accusations to the Minnesota court in the CHIPS proceeding and concealed a court order indicating that New Jersey—not Minnesota—was the proper jurisdiction for the CHIPS proceeding.

In the present action, Plaintiffs' amended complaint alleges 25 counts against Defendants, including constitutional, federal, and state law claims.  Counts 1 through 6, advanced by all plaintiffs, allege that several Minnesota child-protection statutes are facially unconstitutional because they are void for vagueness and violate the Due Process

---

[5]     Plaintiffs allege that Dakota County social worker Susan Boreland said to Mitchell, "[w]hy are all black families so quick to spank their children? You are unfit to be parents and don't deserve to have children."

and Equal Protection Clauses of the United States Constitution.[6]  The remaining 19 counts are advanced only by the individual plaintiffs.  Counts 7 through 12 allege that the same Minnesota child-protection statutes challenged in Counts 1 through 6 are unconstitutional as applied to the individual plaintiffs.  Counts 13 and 14 allege that Dakota County's policies caused civil rights violations.  Counts 15 through 17 allege that state and county officials engaged in conspiracies to terminate Mitchell's parental rights.  Counts 18 through 24 are state law claims, alleging intentional infliction of emotional distress, negligence, negligent infliction of emotional distress, malicious prosecution, abuse of process, and false imprisonment.  Count 25 is a request for declaratory relief against Dakota County.

## ANALYSIS

Defendants move to dismiss the amended complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  A defendant may challenge the plaintiff's complaint for lack of subject-matter jurisdiction either on its face or on the factual truthfulness of its averments.  Fed. R. Civ. P. 12(b)(1); *see, e.g.*, *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993).  Here, Defendants assert a facial challenge to subject-matter jurisdiction.[7]  In a facial challenge, the nonmoving party "receives the same protections as it would defending against a motion brought under Rule 12(b)(6)."  *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990).

---

[6]     Plaintiffs challenge the following child-protection statutes: Minnesota Statutes Section 260C.007, subdivisions 5, 6 and 13; Section 260C.301, subdivision 1; and Section 626.556, subdivision 2.

[7]     Defendants argue that the amended complaint's allegations, taken as true, are insufficient to confer jurisdiction.

A complaint must be dismissed if it fails to state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint must allege sufficient facts that, when accepted as true, state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When determining whether the complaint states such a claim, a district court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010). The factual allegations need not be detailed, but they must be sufficient to "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A plaintiff, however, must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555. Legal conclusions that are couched as factual allegations may be disregarded by the district court. *See Iqbal*, 556 U.S. at 678-79.

## I.     Subject-Matter Jurisdiction over Federal Claims

Defendants argue that this Court lacks subject-matter jurisdiction over Counts 1 through 6 because Plaintiffs lack constitutional standing.

Federal courts are courts of limited jurisdiction. U.S. Const. art. III, § 2, cl. 1; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Hargis v. Access Capital Funding, LLC*, 674 F.3d 783, 790 (8th Cir. 2012). Before a district court can reach the merits of a claim, the court must determine the jurisdictional question of standing. *City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569 (8th Cir. 2007). If a federal district court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action. Fed.

R. Civ. P. 12(h)(3). When the district court or a party challenges standing, the party invoking federal jurisdiction has the burden to establish that the requirements of standing have been satisfied. *Mineta*, 495 F.3d at 569. Standing is determined based on the facts as they existed when the complaint was filed. *Lujan*, 504 U.S. at 569 n.4.

### A. Individual Plaintiffs' Standing for Counts 1 through 6

Defendants argue that the individual plaintiffs lack standing to challenge the facial validity of the Minnesota statutes because there is no real and immediate threat of repeated injury.

To have standing, a plaintiff must (1) have suffered an injury in fact, (2) establish a causal relationship between the defendant's conduct and the alleged injury, and (3) show that the injury would be redressed by a favorable decision. *Id.* at 560-61; *Mineta*, 495 F.3d at 569. When, as here, a plaintiff seeks prospective relief, a plaintiff also must establish a "real and immediate threat" that the injury will be repeated. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102-05 (1983); *Mosby v. Ligon*, 418 F.3d 927, 933 (8th Cir. 2005).

Here, the individual plaintiffs seek injunctive and declaratory relief in Counts 1 through 6.[8] When the suit was commenced, the individual plaintiffs had returned to their home state of New Jersey and Defendants no longer had custody over Mitchell's children. As they live in New Jersey, the individual plaintiffs are no longer subject to Minnesota's

---

[8] Although Plaintiffs' amended complaint also seeks damages, a facial challenge is "necessarily directed at the statute itself and [the remedy] *must* be injunctive and declaratory." *Ezell v. City of Chicago*, 651 F.3d 684, 698 (7th Cir. 2011); *cf. Mosby*, 418 F.3d at 932-33 (equating a litigant bringing a facial challenge to one seeking declaratory or injunctive relief).

laws.  And there is no allegation in the amended complaint that demonstrates a real and immediate threat that Minnesota's child-protection statutes will interfere with the individual plaintiffs' familial relationship again.  Accordingly, the individual plaintiffs lack standing to bring Counts 1 through 6.

**B.    SCPS's Standing for Counts 1 through 6**

Defendants argue that SCPS also lacks standing to bring Counts 1 through 6 because SCPS's members do not have standing in their own right.  Plaintiffs counter that SCPS's members have standing because they have been affected by Minnesota's child-protection statutes.

An association has standing when three conditions are met: at least one of its members has standing, the asserted interests are germane to the association's purpose, and the individual members' participation in the lawsuit is unnecessary.  *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 342-43 (1977).  A member's interest must be more than an "abstract concern" or "unadorned speculation."  *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40, 44 (1976).

Here, Defendants argue that no SCPS member has standing in his or her own right. The amended complaint alleges that SCPS is "an association of parents who have been affected or may be affected" by Minnesota's child-protection system.  This abstract concern does not establish that any SCPS member has suffered an injury in fact.  *See id.* at 40.  Nor does the amended complaint provide any allegations linking the Minnesota

statutory provisions at issue to SCPS's members.[9]  Moreover, there is no indication that

SCPS's members face a real and immediate threat of being harmed by Minnesota's child-

protection statutes again.  *Lyons*, 461 U.S. at 102-05.  Accordingly, SCPS does not have

standing to bring Counts 1 through 6.

For these reasons, the Court grants Defendants' motions to dismiss Counts 1 through

6, as both the individual plaintiffs and SCPS lack standing to bring these claims.

## II.        Failure to State a Claim

Defendants argue that Counts 7 through 17, the remaining constitutional and federal

claims, fail to state claims on which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).

### A.        Constitutional Claims

The individual plaintiffs allege four categories of constitutional claims: procedural

due process, substantive due process, equal protection, and freedom of association claims.

The Court addresses each category of claims in turn.[10]

#### 1.        Procedural Due Process (Counts 7, 8 and 12)

Defendants argue that Counts 7, 8 and 12 fail to state a claim for violation of

procedural due process.  The amended complaint alleges that Defendants failed to provide

---

[9]        In a facial challenge to the Court's jurisdiction, like the challenges here to Counts 1 through 6, the standing analysis is limited to the pleadings.  *See Semler v. Klang*, 603 F. Supp. 2d 1211, 1219-20 (D. Minn. 2009) ("If the defendant brings a facial challenge . . . the Court reviews the pleadings alone . . . .").  Thus, the SCPS declarations submitted by Plaintiffs in their responsive briefs are not considered in this analysis.

[10]        Count 12 alleges Fourteenth Amendment procedural and substantive due process violations as well as a First Amendment freedom of association violation.  Each of these allegations is addressed in the relevant section of the Court's analysis.

adequate procedural safeguards during the CHIPS proceeding and in Mitchell's separation from Litvinenko.

To state a claim for a violation of procedural due process, a plaintiff must allege that defendants deprived the plaintiff of a protectible liberty or property interest without providing adequate procedural safeguards. *Mathews v. Eldridge*, 424 U.S. 319, 332-33 (1976). Natural parents have a fundamental liberty interest "in the care, custody, and management" of their children. *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). When the government attempts to interfere with this liberty interest, a parent must be afforded "fundamentally fair procedures." *Id.* at 754. Procedural due process requires that parties have "a meaningful opportunity to present their case." *Eldridge*, 424 U.S. at 349. The extent of procedural safeguards required depends on the nature of the interest at stake. *See Goldberg v. Kelly*, 397 U.S. 254, 262 (1970); *see also Eldridge*, 424 U.S. at 334 ("Due process is flexible and calls for such procedural protections as the particular situation demands.").

Here, through the commencement and pursuit of a CHIPS proceeding, Defendants interfered with Mitchell's liberty interest in the care, custody, and management of his children. Although the individual plaintiffs are unhappy with the decisions Defendants made during the CHIPS proceeding,[11] the amended complaint fails to allege that Mitchell

---

[11] The amended complaint alleges that Defendants concealed pertinent documents, which indicated that New Jersey was the proper jurisdiction for the CHIPS proceeding. But Mitchell himself resolved this concern by bringing the documents to the Minnesota court's attention on October 19, 2015. The amended complaint also alleges that during the CHIPS proceeding Defendants failed to prove Mitchell's unfitness. Yet the individual

was denied a meaningful opportunity to present his case or that any procedural safeguards were lacking. The complaint concedes that Mitchell had notice of the CHIPS proceeding and attended several hearings adjudicated by neutral officials. That the individual plaintiffs were dissatisfied with the outcome of the hearings is not a cognizable due process claim. *See Eldridge*, 424 U.S. at 349. As there are no allegations of *any* omission of procedural safeguards, the individual plaintiffs fail to state a claim.

The amended complaint also alleges that Mitchell was not afforded due process when he was deprived of his interest in living with Litvinenko. As a threshold matter, it is not clear that Mitchell's proffered liberty interest, cohabitation with a spouse, is entitled to procedural due process protections. *See Kerry v. Din*, 135 S. Ct. 2128, 2133-35 (2015) (plurality) (holding that spousal cohabitation is not a protected interest under procedural due process and explaining that procedural safeguards are not triggered merely because "a regulation in any way touches upon an aspect of the marital relationship"). And even if procedural due process extends to spousal cohabitation, the amended complaint fails to sufficiently allege how *Defendants* deprived Mitchell of this interest. The amended complaint alleges that county officials warned Litvinenko that she would lose custody of M.L. if she did not move out of Mitchell's house. At some unspecified time after this conversation, Litvinenko moved. Without more, the nexus between Defendants' conduct

---

plaintiffs concede that a showing of unfitness is not a requirement under the Uniform Child Custody Jurisdiction and Enforcement Act.

and Mitchell's separation from Litvinenko is too speculative to survive a Rule 12(b)(6) motion to dismiss. *See Twombly*, 550 U.S. at 555.

For these reasons, the Court grants Defendants' motions to dismiss the procedural due process claims in Counts 7, 8 and 12.

### 2.    Substantive Due Process (Counts 9 and 12)

Defendants also argue that Counts 9 and 12 fail to state claims for substantive due process violations. The amended complaint alleges that Defendants interfered with the individual plaintiffs' rights to marriage, intimate association and privacy.

Substantive due process protects an individual's fundamental liberty interests from certain government actions, regardless of the procedural safeguards in place. *See Flowers v. City of Minneapolis*, 478 F.3d 869, 873 (8th Cir. 2007). To state a claim for an executive official's violation of substantive due process, a plaintiff must allege "(1) that the official violated one or more fundamental constitutional rights, and (2) that the conduct of the executive official was shocking to the contemporary conscience." *Id.* (internal quotation marks omitted).

Whether an official's action shocks the conscience is a question of law. *Hayes v. Faulkner Cty.*, 388 F.3d 669, 674-75 (8th Cir. 2004). Conscience-shocking conduct includes "[o]nly the most severe violations of individual rights that result from the brutal and inhumane abuse of official power." *White v. Smith*, 696 F.3d 740, 757-58 (8th Cir. 2012) (internal quotation marks omitted). This type of severe abuse of power exists, for example, when an officer systematically coerces witnesses and entirely ignores implausible aspects of witness testimony. *See, e.g.*, *id.* at 758 (holding that officer's reliance on coerced

testimony, even though the witness's proffered time, location, and description of the murder were incorrect, constituted conscience-shocking conduct). In contrast, an officer's unsubstantiated and inaccurate statements in minor reports, such as shoplifting reports, do not shock the conscience. *See Krogh v. Sweeney*, 195 F. Supp. 3d 1049, 1054 (D. Minn. 2016).

While agreeing that fundamental rights are at stake, Defendants argue that the amended complaint does not allege conscience-shocking conduct. Even when accepting as true that Defendants relied on Campos's and A.M.'s accusations and that these accusations were of questionable credibility, the amended complaint nonetheless fails to allege a sufficiently severe abuse of power. CHIPS proceedings are designed to protect the welfare and safety of children. *See* Minn. Stat. § 260C.001, subd. 2. Pursuing a CHIPS proceeding—even in the face of hotly contested accusations—is not the type of "inhumane abuse of official power" necessary to state a substantive due process claim. *See White*, 696 F.3d at 758 (internal quotation marks omitted). Moreover, unlike the testimony in *White*, there are no allegations that Campos's and A.M.'s accusations were the product of witness coaching or were wholly contradictory to established facts. *See id.* Instead, Defendants' inclusion of unverified or inaccurate statements in an official report is akin to the actions in *Krogh*, which were not conscience-shocking. *See* 195 F. Supp. 3d at 1054.

Because the amended complaint fails to allege facts that would establish a substantive due process violation, the Court grants Defendants' motions to dismiss Counts 9 and 12.

### 3.     Equal Protection (Counts 10 and 11)

Defendants also challenge Counts 10 and 11, arguing that they fail to state claims for violations of the Equal Protection Clause because there is no allegation that Mitchell was treated differently than similarly situated individuals.  Counts 10 and 11 allege that Minnesota's child-protection statutes' consideration of a child's culture amounts to racial discrimination.[12]

To state an equal-protection claim, a plaintiff must allege that a law either is discriminatory on its face or has both a discriminatory purpose and discriminatory impact. *See Washington v. Davis*, 426 U.S. 229, 242 (1976).  Whether a plaintiff brings the claim as a member of a protected class or as a class of one, the plaintiff must allege "invidiously dissimilar" treatment relative to similarly situated persons.  *Flittie v. Solem*, 827 F.2d 276, 281 (8th Cir. 1987).

The Minnesota statutes at issue here are not facially discriminatory because the consideration of "culture" applies equally to all children.[13]  As such, the question presented here is whether the amended complaint sufficiently alleges that the statutes have a discriminatory purpose and impact.  By this measure, the amended complaint falls short.

---

[12]     The individual plaintiffs challenge the application of Minn. Stat. § 626.556, subds. 2(r), (f) and (g).  Section 626.556, subdivision 2(r), provides that investigators must consider the "accepted child-rearing practices of the culture in which a child participates" when assessing the suitability of a child's environment.  Subdivisions 2(f) and 2(g) similarly permit investigators to consider a child's culture when assessing the child's mental or cognitive impairment.

[13]     Although the individual plaintiffs contend that racial disparities exist within Minnesota's child-protection services, the amended complaint does not plausibly link any racial disparity problem to the statutory provisions' consideration of culture.

The individual plaintiffs do not allege that the challenged Minnesota child-protection statutes were enacted with a discriminatory purpose. Nor do the individual plaintiffs compare Mitchell's treatment under the statutory framework to that of any other similarly situated parent.

For these reasons, the Court grants Defendants' motions to dismiss Counts 10 and 11.

### 4. Freedom of Expressive Association (Count 12)

Count 12, Defendants argue, fails to state a claim for a First Amendment violation. Count 12 alleges that Defendants interfered with the individual plaintiffs' freedom of expressive association by forcing Mitchell and Litvinenko to live separately.

Freedom of expressive association prohibits excessive governmental interference with certain relationships, including marital relationships. *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 622-23 (1984); *Wingate v. Gage Cty. Sch. Dist., No. 34*, 528 F.3d 1074, 1081 (8th Cir. 2008). To state such a claim, a plaintiff must allege that "a substantial or motivating factor" of the defendant's conduct was the defendant's intent to interfere with the protected relationship. *Wingate*, 528 F.3d at 1081-82 (internal quotation marks omitted). Governmental interference with the protected relationship is justified, however, if the government has a sufficiently important interest and uses narrowly tailored means to further that interest. *Id.* at 1081.

The individual plaintiffs' First Amendment claim fails for at least two reasons. First, as addressed in Part II.A.1 of this Order, Defendants' alleged interference with Mitchell's marital relationship is too speculative to survive a Rule 12(b)(6) motion to dismiss.

*Twombly*, 550 U.S. at 555. Second, the amended complaint contains only conclusory allegations that Defendants' conduct was motivated by a desire to interfere with Mitchell's marital relationship.[14] Merely asserting that Defendants "intentionally and with malice interfered in Mitchell's and Litvinenko's marital relationship" is insufficient to state a plausible claim.

Accordingly, the Court grants Defendants' motions to dismiss the individual plaintiffs' freedom of expressive association claim.

## B. Federal Law Claims

The individual plaintiffs bring two categories of claims arising under federal law. The individual plaintiffs allege that Dakota County's policies led to civil rights violations. The individual plaintiffs also allege that Defendants engaged in a conspiracy to deprive Mitchell of his parental rights. Each category is addressed, in turn.

### 1. County Policies and Supervisory Violations (Counts 13 and 14)

Defendants argue that Counts 13 and 14 fail to adequately allege defective governmental policies. Count 13 alleges that Dakota County and its employees engaged in various unlawful practices; and Count 14 alleges, more specifically, that county officials failed to train and supervise their social workers. [15]

---

[14] Because the claim fails for the foregoing reasons, the Court need not reach the question of whether Defendants' conduct was justified. However, the Court observes that it is well established that the government has a strong interest in protecting children. *See Dornheim v. Sholes*, 430 F.3d 919, 925-26 (8th Cir. 2005).

[15] The amended complaint alleges that Dakota County's wrongful policies include separating families without warrants, performing medical examinations on children without parental consent, coercing parents to sign contracts, fabricating evidence, failing to comply with the CHIPS proceeding jurisdictional requirements codified in Minn. Stat.

A municipality can be held liable for civil rights violations arising from the implementation of its wrongful policies or customs. *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 694 (1978). Liability for such violations does not extend to isolated instances of misconduct, but rather to defective county-wide policies. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013). Allegations that the training of a particular official was unsatisfactory, that a municipality was occasionally negligent in administering a program, or that an injury could have been prevented by different or better training are all insufficient to state a claim. *See City of Canton v. Harris*, 489 U.S. 378, 390-91 (1989). Instead, a plaintiff must allege that the county "had notice of prior misbehavior by its [employees] and failed to take remedial steps amounting to deliberate indifference to the offensive acts." *See Patzner v. Burkett*, 779 F.2d 1363, 1367 (8th Cir. 1985). And a plaintiff must allege that the municipality's defective policy was the "moving force behind the constitutional violation." *Harris*, 489 U.S. at 389 (internal quotation marks omitted).

Each of the policies alleged in the amended complaint is rooted in the individual plaintiffs' interactions with particular Defendants, and these interactions provide no indication of a widespread policy. The amended complaint alleges that Dakota County customarily fails to comply with jurisdictional requirements in CHIPS proceedings. Yet, in the only other CHIPS proceeding referenced in the complaint, that of Litvinenko, the

---

§ 518D.203, refusing to implement safety plans that avoid foster care placement, failing to supervise agents adequately, and publishing premature conclusions of parental maltreatment.

amended complaint concedes that Dakota County properly observed jurisdictional rules. The amended complaint's allegations regarding failure to train also are insufficient to state a claim. Even assuming Dakota County's training manuals do not include citations to all pertinent Minnesota statutes governing CHIPS proceedings, merely alleging that training could have been better is insufficient to survive a motion to dismiss. *See id.* at 391.

Notably, Counts 13 and 14 are insufficient for additional reasons. The amended complaint fails to allege that Dakota County was on notice of any prior misconduct of its employees. Moreover, the amended complaint fails to allege that Dakota County's policies were the "moving force" behind a constitutional violation because, as addressed in the preceding sections of this Order, the amended complaint has not sufficiently alleged a constitutional violation. *See id.* at 389.

For these reasons, Defendants' motions to dismiss Counts 13 and 14 are granted.

## 2. Conspiracy (Counts 15 through 17)

Defendants also argue that Counts 15 through 17 fail to state claims for conspiracy under Title 42, United States Code, Sections 1985 and 1986. Counts 15 through 17 allege that state and county officials conspired to deprive Mitchell of his parental rights and transfer custody of the children to Campos. The officials acted in furtherance of this conspiracy, the amended complaint alleges, by concealing relevant documents, submitting unreliable accusations, and orchestrating B.M.'s expulsion from his school.

To state a claim for a Section 1985 conspiracy, a plaintiff must allege "that the defendant conspired with others to deprive him or her of a constitutional right; that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy;

and that the overt act injured the plaintiff." *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir.

1999). A plaintiff also must allege an actual deprivation of the constitutional right. *Id.*

Only if a plaintiff sufficiently alleges a Section 1985 conspiracy can a plaintiff state a claim

for a Section 1986 failure to prevent the conspiracy. *See Gatlin ex rel. Estate of Gatlin v.*

*Green*, 362 F.3d 1089, 1095 (8th Cir. 2004).

As addressed here in Part II, the individual plaintiffs have failed to state a claim for

any constitutional violation. For this reason, the amended complaint does not allege the

required elements of a Section 1985 conspiracy claim. *See Askew*, 191 F.3d at 957. By

extension, the individual plaintiffs' Section 1986 claim fails for lack of a predicate

conspiracy. *See Gatlin*, 362 F.3d at 1095. Accordingly, the Court grants Defendants'

motions to dismiss Counts 15 through 17.

### III. Subject-Matter Jurisdiction Over State-Law Claims (Counts 18 through 24)

Defendants argue that they are immune from liability for the state-law claims,

Counts 18 through 24.[16] Moreover, when it appears that subject-matter jurisdiction may

be lacking, a federal court may consider jurisdictional immunity issues *sua sponte*. *See*

*Hart v. United States*, 630 F.3d 1085, 1089 (8th Cir. 2011) (affirming district court's *sua*

*sponte* ruling on subject-matter jurisdiction and noting that a defendant's burden to prove

---

[16] The individual plaintiffs allege intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, malicious prosecution, abuse of process, and false imprisonment. Defendants DCSS and state official Emily Piper are not named as defendants in these state-law claims.

entitlement to immunity is "irrelevant"). Both sovereign immunity and common-law official immunity are implicated here, and the Court addresses each in turn.

### A. Sovereign Immunity for Official-Capacity Claims

Sovereign immunity bars state-law claims against government officials in federal court, absent the state's unequivocal consent. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-99 (1984). Subject to certain exceptions, Minnesota has expressly waived the sovereign immunity of its state officials for tort liability via the Minnesota Tort Claims Act (MTCA). Minn. Stat. § 3.736. But the MTCA does *not* waive immunity for an injury caused by a state official's performance of a discretionary duty, even when the discretion is abused. Minn. Stat. § 3.736, subd. 3(b). In this context, a discretionary act is an act that "involve[s] balancing policy objectives such as economic, social, and political factors." *Christensen v. Mower Cty.*, 587 N.W.2d 305, 307 (Minn. Ct. App. 1998). Similarly, Minnesota expressly waives the sovereign immunity of municipalities and their officials, subject to exceptions. Minn. Stat. § 466.02. As relevant here, however, municipalities and their officials are *not* liable for tort claims arising from an official's discretionary acts. Minn. Stat. § 466.03, subd. 6.

The amended complaint challenges state and local officials' investigation of child-abuse accusations and the officials' conduct during the CHIPS proceeding. All of the alleged actions involve the exercise of the state and local officials' judgment. When investigating child-abuse accusations and making case-management decisions, state and local officials necessarily must balance the parents' interest in the care and management of their children with the state's interest in the welfare of children. Because the state-law

claims implicate only discretionary functions, Minnesota has not waived the state or local officials' sovereign immunity to this suit.

For the reasons addressed above, this Court lacks subject-matter jurisdiction over Counts 18 through 24, the tort claims asserted against Dakota County and the state and county officials in their official capacities.

### B.    Common-Law Official Immunity for Individual-Capacity Claims

Defendants argue that they are immune from personal liability for Counts 18 through 24 under the common-law doctrine of official immunity. The individual plaintiffs counter that such immunity has been statutorily waived because Defendants submitted false reports in the CHIPS proceeding.

Official immunity is a common-law doctrine that protects public officials from personal liability for state-law tort claims. *Mumm v. Mornson*, 708 N.W.2d 475, 490 (Minn. 2006). Under Minnesota law, public officials are entitled to official immunity unless the plaintiff shows either that a public official failed to perform a ministerial duty, performed that duty negligently, or committed a willful or malicious wrong. *See Schroeder v. St. Louis Cty.*, 708 N.W.2d 497, 505 (Minn. 2006). "Malice in the context of official immunity means intentionally committing an act that the official has reason to believe is legally prohibited." *Kelly v. City of Minneapolis*, 598 N.W.2d 657, 663 (Minn. 1999). Malice is not present if a defendant's conduct (1) objectively was legally reasonable, (2) was performed in good faith, or (3) did not violate a "clearly established" right. *Gleason v. Metro. Council Transit Operations*, 563 N.W.2d 309, 318 (Minn. Ct. App. 1997). As

neither party argues that Defendants' conduct was ministerial, the question before the Court is whether the amended complaint alleges malicious conduct.[17]

First, the allegations regarding Defendants' negligent investigation of accusations and Defendants' negligent training and supervision of social workers do not rise to the level of malicious behavior. These allegations invoke a negligence standard and are, by definition, not intentional. Because the malice exception to official immunity requires an intentional commission of an act, the amended complaint's allegations of negligence do not qualify for this exception.

Second, the amended complaint alleges that Defendants submitted unreliable accusations to the Minnesota court presiding over the CHIPS proceeding, pursued the CHIPS proceeding with the aim of terminating Mitchell's parental rights, and removed Mitchell's children from his custody. These allegations fall short of malice because Defendants provide a basis for their actions that objectively is legally reasonable. Defendants assert that they commenced the CHIPS proceeding in furtherance of the state's well-established interest in protecting children and preventing child abuse. Indeed, Minnesota's child-protection statutes expressly contemplate that these proceedings may result in the removal of a child and termination of parental rights if it is in the child's best

---

[17] The individual plaintiffs argue that Minn. Stat. § 626.556, subd. 5, waives official immunity. Under the "Malicious and reckless reports" provision codified at Minn. Stat. § 626.556, subd. 5, "[a]ny person who knowingly or recklessly makes a false report under the provisions of this section shall be liable in a civil suit for any actual damages suffered by the person or persons so reported . . . ." The malicious submission of a CHIPS report is already accounted for by the malice exception to official immunity. As such, Minn. Stat. § 626.556, subd. 5, does not change this analysis.

interests. Minn. Stat. § 260C.001. Therefore, Defendants' actions—pursuing a CHIPS proceeding and presenting to the state court the accusations against Mitchell—are grounded in an objectively, legally reasonable basis.

Third, the amended complaint alleges that, during the CHIPS proceeding, Defendants concealed documents relating to proper jurisdiction. This alleged act also does not qualify as malicious conduct. Mitchell had both access to these documents and the ability to present these documents to the Minnesota court. Moreover, as the amended complaint concedes, Mitchell presented these documents to the Minnesota court. It simply does not follow that Mitchell had a right, let alone a "clearly established" right, to have *Defendants* present this information.[18]

In summary, because all Defendants against whom the state-law claims were brought are entitled to immunity in their individual and official capacities, this Court lacks subject-matter jurisdiction over Counts 18 through 24. Defendants' motions to dismiss Counts 18 through 24 are granted.

## IV. Declaratory Relief (Count 25)

Finally, Defendants argue that Count 25's request for declaratory relief fails because there is no underlying cause of action on which to predicate the request.

The Uniform Declaratory Judgments Act (UDJA) gives courts "within their respective jurisdictions" the power to "declare rights, status, and other legal relations."

---

[18]   As Defendants correctly observe, there is no duty to disclose exculpatory evidence in a civil action. *See Millspaugh v. Cty. Dept. of Pub. Welfare of Wabash Cty.*, 937 F.2d 1172, 1175 n.1 (7th Cir. 1991) (noting that there is no parallel to the *Brady* requirement of disclosing exculpatory evidence in civil litigation).

Minn. Stat. § 555.01.  The declaratory relief must be based on an underlying cause of action because the UDJA does not "create a cause of action that does not otherwise exist." *All. for Metro. Stability v. Metro. Council*, 671 N.W.2d 905, 916 (Minn. Ct. App. 2003).

The individual plaintiffs seek declaratory judgment that Dakota County's invoices to Mitchell for foster care costs are invalid.  But in light of the dismissal of Counts 1 through 24, the Court lacks any basis to award declaratory relief.  Accordingly, the Court grants Defendants' motions to dismiss Count 25.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' motions to dismiss, (Dkts. 15, 24), are **GRANTED** and Plaintiffs' amended complaint, (Dkt. 8), is **DISMISSED WITHOUT PREJUDICE**.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  January 28, 2019                                 s/Wilhelmina M. Wright
                                                         Wilhelmina M. Wright
                                                         United States District Judge